IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WERNER ENTERPRISES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SMC TRANSPORT, LLC, and UNITED SPECIALTY INSURANCE COMPANY, <br><br> Defendants. | 8:20CV164 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff Werner Enterprises, Inc's ("Werner") Motion for Partial Summary Judgment (Filing No. 64) and Defendants SMC Transport, LLC ("SMC") and United Specialty Insurance Company ("United Specialty" or "United") Motion for Summary Judgment (Filing No. 71). For the reasons stated below, Werner's Motion for Partial Summary Judgment will be granted, and Defendants' Motion for Partial Summary Judgment will be denied.

**I.   BACKGROUND**

Unless otherwise indicated, the following facts are taken from those parts of the parties' briefs that are supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1 and Fed. R. Civ. P. 56. Some citations to the record have been omitted where the parties agree as to the facts.

**The Parties' Agreements**

On February 4, 2015, Werner and SMC entered into a Broker-Carrier Agreement ("Broker Carrier Agreement"). Filing No. 66-1, Broker-Carrier Agreement at 1; Filing No. 66-5, SMC's Answer to Interrogatory No. 5; Filing No. 66-6, SMC's Response to Request for Admission No. 1. Under the Broker-Carrier Agreement, SMC agreed to transport

certain shipments for Werner. Filing No. 66-1, Broker-Carrier Agreement at 1. Werner and SMC also entered into a Trailer Interchange Agreement, dated February 4, 2015. Filing No. 66-3, Trailer Interchange Agreement; Filing No. 66-5, SMC's Answer to Interrogatory No. 5; Filing No. 66-6, SMC's Response to Request for Admission No. 2. The Trailer Interchange Agreement contains an indemnity provision in which SMC (identified as the "User") agreed to indemnify Werner for certain claims unless caused by Werner's own negligence. Filing No. 66-3, Trailer Interchange Agreement, ¶4.

In both agreements, SMC also agreed to obtain insurance to protect against losses arising out of SMC's transportation of Werner's trailers. Filing No. 66-1, Broker-Carrier Agreement, ¶8; Filing No. 66-3, Trailer Interchange Agreement, ¶5. SMC obtained a policy of liability insurance issued by United Specialty, effective on or around September 11, 2017, Policy No. MAT-0003500-30889 (hereinafter, the "Policy"). Filing No. 66-5, Liability Policy. The Named Insured in the Policy was Cross Border Intermodal Association Transportation, a Risk Purchasing Group. *Id.* at WERNER 00000349. SMC was also specifically identified as an Insured under the Policy. *Id.* at WERNER 00000347. The Certificate of Liability Insurance, dated September 11, 2017, also listed Werner as a certificate holder on the Policy and as an Additional Insured under the Policy. Filing No. 66-8, Certificate of Liability Insurance. United Specialty previously stipulated that Werner was "at all relevant times, an additional insured" under the Policy. Filing No. 10, Joint Stipulation, ¶3.

Subject to various limitations and exclusions, The Policy provided liability coverage for all sums an "insured" becomes legally obligated to pay as damages because of bodily injury or property damage caused by an "accident" and resulting from the ownership, maintenance, or use of a covered auto. Filing No. 66-5, Liability Policy, at WERNER

2

00000350, 358). The Policy also stated that United Specialty had the "right and duty to defend any 'insured' against a 'suit' asking for such damages." *Id.* at WERNER 00000358-59. Under the same paragraph, United Specialty did not have a duty to "defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' or a 'covered pollution cost or expense' to which this insurance does not apply." *Id.* WERNER 0000359.

The Policy provided liability coverage for certain covered "autos" described in the Policy. *Id.* at WERNER 00000348. The Policy included a "Schedule of Covered Autos." Filing No. 66-14, Liability Policy Schedules, at DEF00052-00053; Filing No. 66-7, United Specialty's Responses to Requests for Admission Nos. 2 and 3. The SMC tractor involved in the Accident was specifically described on the Schedule of Covered Autos. Filing No. 66-7, United Specialty's Responses to Requests for Admission Nos. 2 and 3; Filing No. 66-15, Liability Policy Schedules, at DEF00052, Line 13. Because the SMC tractor was specifically described in the Policy Schedule as a covered auto, the SMC tractor qualified as a covered "auto" under the Policy. Filing No. 66-7, United Specialty's Responses to Requests for Admission Nos. 2 and 3; *id.* at Ex. 4, Liability Policy, at WERNER 00000348, 350.

## The Accident

On October 3, 2017, an SMC driver was involved in a fatality accident (the "Accident") while driving a tractor owned by SMC and pulling a trailer owned by Werner. Filing No. 50, Amended Complaint, ¶7; Filing No. 51, Defendants' Answer to Plaintiff's Amended Complaint, ¶7. On June 21, 2018, a lawsuit was filed in the United States District Court for the Southern District of Mississippi, asserting a wrongful death claim against Werner, SMC, and various other defendants as a result of the Accident. Filing

3

No. 66-9, Riggio Amended Complaint. That lawsuit was captioned *Dustin Riggio et al v. Israel Pruneda, SMC Transport, LLC, Werner Enterprises, Inc. et al.*, Case No. 1:18-cv-218-LG-RHW (hereinafter the "Riggio Lawsuit"). *Id.*

In the Riggio Lawsuit, the plaintiffs alleged, among other things, that Werner was liable for damages stemming from the Accident, which involved the SMC tractor and the attached Werner trailer. Filing No. 66-9, Riggio Amended Complaint, ¶¶ 20-21, 46, 48, 56, 90-100. Specifically, the plaintiffs alleged that Werner owned the trailer involved in the accident and Werner was negligent in numerous respects, including by failing to ensure that the trailer brakes, lighting system, and other emergency equipment were in place and working properly, failing to ensure that the trailer had an appropriate rear guard, and failing to ensure that the trailer was properly loaded and had its weight correctly distributed. *Id.* at ¶ 96.

### Werner's Defense in the Riggio Lawsuit

At the time of the Accident, a trailer owned by Werner was attached to, and was being hauled by, a covered auto specifically described in the Policy (SMC's tractor). Filing No. 66-14, Liability Policy Schedules, at DEF00052, Line 13; *id.* at Ex. 6, United Specialty's Responses to Requests for Admission Nos. 2 and 3. United Specialty admitted that the Riggio Lawsuit sought damages from Werner for "alleged bodily injury allegedly caused by an 'accident' allegedly resulting from the ownership, maintenance or use of a covered 'auto,' as the terms in quotation marks are defined in the Policy." Filing No. 66-7, United Specialty's Response to Request for Admission No. 7. United Specialty also admitted that the allegations of the Riggio Lawsuit could form the basis for potential coverage under the liability portion of the Policy issued to SMC by United Specialty. *Id.*,

4

United Specialty's Responses to Request for Admission No. 8. Though United Specialty asserts that Werner's failure to comply with the Policy terms nullified coverage.

On July 23, 2018, Werner was served with process in the Riggio Lawsuit. Filing No. 50, Amended Complaint, ¶14; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶14. On July 31, 2018, Werner provided written notice of the Riggio Lawsuit to United Specialty and SMC. Filing No. 50, Amended Complaint, ¶15; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶15. As required by the Policy, Werner tendered the defense of the Riggio Lawsuit to United Specialty. Filing No. 50, Amended Complaint, ¶¶15-16; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶¶15-16; Filing No. 66-11, Tender of Defense Correspondence. Pursuant to the Agreements, Werner also tendered the defense of the Riggio Lawsuit to SMC. Filing No. 50, Amended Complaint, ¶15; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶15.

United Specialty did not accept Werner's tender and did not provide Werner with a defense in the Riggio Lawsuit. Filing No. 50, Amended Complaint, ¶16; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶16. SMC did not accept Werner's tender and did not provide Werner with a defense in the Riggio Lawsuit. Filing No. 50, Amended Complaint, ¶17; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶17. Because Defendants refused to defend Werner, Werner retained a lawyer and paid for its own defense. Exhibit B, Declaration of Linda Mihm ("Mihm Decl."), ¶6.

On November 15, 2019, Werner won summary judgment in the Riggio Lawsuit. Culhane Decl. at Ex. 9, Riggio Summary Judgment Order, pp. 1, 13-16; Filing No. 50, Amended Complaint, ¶18; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶18. Werner claims that it incurred attorney fees and costs to successfully defend itself in the Riggio Lawsuit, totaling in excess of $230,000.00. Mihm Decl. ¶6.

5

On December 9, 2019, Werner made a demand on United Specialty and SMC, seeking reimbursement for the attorney fees and costs Werner incurred to successfully defend the Riggio Lawsuit. Filing No. 66-13, Indemnification Correspondence; Filing No. 50, Amended Complaint, ¶19; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶19. To date, United Specialty and SMC have refused to reimburse Werner for the costs and fees Werner incurred to defend the Riggio Lawsuit. Filing No. 50, Amended Complaint, ¶19; Filing No. 51, Answer to Plaintiff's Amended Complaint, ¶19.

Werner now seeks partial summary judgment against Defendants on the issue of liability under the Policy and applicable agreements. In sum, Werner argues that Defendants breached their agreement to defend and/or indemnify Werner for costs associated with defending the Riggio Lawsuit and Werner is entitled to damages in an amount to be determined at trial. Defendants argue that the Policy and applicable agreements either did not apply to Werner or that they were relieved of their obligations because Werner failed to meet certain requirements.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). The court views facts in the light most favorable to the nonmoving party, and makes no determinations of credibility; nor does it weigh the evidence or draw inferences, as those functions belong to the jury. *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971–72 (8th Cir. 2019). A party opposing a properly supported motion for summary judgment may not rest on the allegations contained in the pleadings, "but must set forth

specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The record must indicate an absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019). Facts that, if altered, affect the outcome of a lawsuit under applicable substantive law, are material. *Cottrell*, 930 F.3d at 972. A material fact dispute is "genuine" if each party has supplied some evidence that is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 250. "[C]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id.* at 255.

## III.   DISCUSSION

Under Nebraska law,[1] to prevail on a breach of contract claim, a plaintiff must establish the following elements by a preponderance of the evidence: (1) that the plaintiff and defendant entered into the contract; (2) the terms of the contract; (3) that the defendant breached the contract in one or more ways; (4) that the breach was a proximate cause of some damage to the plaintiff; and (5) the nature and extent of that damage. N.J.I.2d Civ. § 15.01. Werner seeks partial summary judgment on the first four elements. The parties do not dispute that they entered into several Agreements. However, Defendants argue that, as a matter of law, they did not breach the parties' agreements and/or issues of fact remain as to the interpretation of the terms of the Agreements.

---

[1] The parties do not dispute that this action is governed by Nebraska law.

Werner alleges that in failing to defend or indemnify, Defendants breached the Policy, the Trailer Interchange Agreement, and the Broker Carrier Agreement.

### A. Defendants' Duty Under Each Agreement

All three agreements contain language potentially creating a duty to defend and a duty to indemnify.

In this case, the Policy required liability coverage under the Policy for any suit alleging "bodily injury" caused by an "accident" and "resulting from the ownership, maintenance or use of a 'covered auto.'" Filing No. 66-5 at 12 of 52, WERNER 0358. Under the Trailer Interchange Agreement, SMC agreed to indemnify and defend "against any and all loss, cost, damages, expense, suits and claims for injury to persons (including injury resulting in death) and damage to property, where such loss, cost, damage, expense, suits and claims, arises out of or in connection with User's use of Werner Trailers." Filing No. 66-3, Trailer Interchange Agreement, ¶4. Likewise, under the Broker Carrier Agreement, SMC agreed to defend, indemnify, and hold Werner harmless for "all claims of every kind…to which [Werner] may be subjected on account of loss or damage to any property whatsoever (including cargo), or injury to, or death of, persons whomsoever, arising out of or in connection with the transportation of property under this Agreement," which obligation "shall not in any manner be limited" by the amounts or types of damages claimed. Filing No. 66-2 at 4 of 7, WERNER 021.

### A. United Specialty's Duty Under the Policy

Werner argues that United Specialty had a duty to defend the Riggio Lawsuit as a matter of law. An insurance policy is to be construed as any other contract, to give effect to the parties' intentions at the time the contract was made. *Kast v. Am.-Amicable Life Ins. Co.*, 559 N.W.2d 460, 463 (Neb. 1997). When the terms of the contract are clear, the

8

terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Id.* The terms at issue in this case involve coverage under a liability insurance policy. Coverage under such a policy consists of two distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured. *Mortg. Express, Inc. v. Tudor Ins. Co.*, 771 N.W.2d 137, 147-48 (Neb. 2009) (internal citations omitted).

An insurer's duty to defend is broader than its duty to indemnify. *Id.* at 147-48. The nature of the duty to defend is defined by the insurance policy as a contract. *Id.* Whether an insurer has a duty to defend depends on the allegations in the complaint filed against the insured. *Id.* An insurer's obligation to defend arises if (1) the allegations in the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify. *Id.* An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. *Id.* An insurer bears a duty to defend its insured whenever it ascertains facts which give rise "to the potential of liability under the policy." *Id.* at 147 (citations omitted); *see also Allstate Ins. Co. v. Novak*, 313 N.W.2d 636, 642 (Neb. 1981) (where an action would be covered by the policy, the carrier has a duty to defend even if the insured may have a valid defense).

The Policy provides liability coverage for all sums an "insured" becomes legally obligated to pay as damages because of bodily injury or property damage caused by an "accident" and resulting from the ownership, maintenance, or use of a covered auto. Filing No. 66-5, Liability Policy, at WERNER 00000350, 358. The Policy also states that United Specialty has the "right and duty to defend any 'insured' against a 'suit' asking for such

9

damages." *Id.* at WERNER 00000358-59. United Specialty admitted in response to Requests for Admission that the plaintiffs in the Riggio Lawsuit sought damages from Werner for bodily injury allegedly caused by a motor vehicle accident resulting from the ownership, maintenance, or use of a covered auto, as defined in the Policy. Filing No. 66-7, United Specialty's Responses to Request for Admission No. 7. Thus, if all other requirements were met, the Riggio Lawsuit triggered United Specialty's duty under the Policy.

United Specialty also specifically admitted that the allegations in the Complaint in the Riggio Lawsuit, if proven, would potentially be covered by the Policy. Specifically, Werner asked United the following Request for Admission and United responded as follows:

> **REQUEST NO. 8:** Admit the *Riggio* Lawsuit alleged claims for damages against Werner that, if proven, would potentially be covered by the Liability coverage in the Policy.
>
> **RESPONSE:** [United] admits that damages alleged in the *Riggio* Lawsuit had the potential to be covered by Liability coverage in the Policy.

Filing No. 66-7 at 3 of 4.

This admission is binding on United Specialty. "Admissions made in response to a Rule 36 request for admission are binding on that party." *Praetorian Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 514 (8th Cir. 2010). Once a party "makes an admission in response to a request for admission, it is conclusively established" and the party may not later "contradict his earlier admissions in an attempt to create an issue of fact solely to avoid summary judgment." *Hernandez v. Perry*, Case No. CV 11-1945-PCT-JAT, 2013 U.S. Dist. LEXIS 128894, *26 (D. Ariz. Sept. 9, 2013) (citing Fed. R. Civ. P. 36); *Praetorian Ins. Co.*, 604 F.3d at 514 (same). As noted above, an insurer bears a duty to defend its insured whenever it ascertains facts which give rise "to the potential of liability under the

10

policy" *Mortg. Express, Inc. v. Tudor Ins. Co.*, 771 N.W.2d 137, 147-48 (Neb. 2009) (citations omitted). By admitting the Riggio Lawsuit had the potential to be covered by the Policy, United Specialty essentially admitted that the Lawsuit triggered United Specialty's duty under the Policy.

United Specialty argues that despite its own admission and although the allegations were covered by the Policy, its duty did not arise because the trailer involved in the Accident was not specifically listed as a "covered auto" under the language of the Policy. As noted above, the Policy provides liability coverage for certain covered "autos." Filing No. 66-5, Liability Policy, at WERNER 00000348. A "covered auto" must be listed in the Policy's "Schedule of Covered Autos." Filing No. 66-15, Liability Policy Schedules, at DEF00052-00053; Filing No. 66-7, United Specialty's Responses to Requests for Admission Nos. 2 and 3. United Specialty argues that its duty did not arise because the trailer involved in the accident at issue in the Riggio Lawsuit was not listed in the Schedule of Covered Autos. While the trailer in the Accident was not listed, the SMC tractor attached to the trailer was specifically described on the Schedule of Covered Autos. Filing No. 66-7, United Specialty's Responses to Requests for Admission Nos. 2 and 3; Filing No. 66-15, Liability Policy Schedules, at DEF00052, Line 13. Because the SMC tractor was specifically described in the Policy Schedule, it is a covered auto under the coverage provision of the Policy. *See* Filing No. 74 at 4, admitting Fact No. 19.

Because there is no dispute that the SMB tractor is a covered auto, United Specialty's duty arose under the Policy even if the trailer attached to the tractor was not a covered auto. The complete liability coverage language of the Policy states:

> **Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused

11

> by an "accident" and resulting from the ownership, maintenance *or use of a* covered "auto."
>
> * * *
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages…

Filing No. 66-5 at 12 of 52, WERNER 0358 (emphasis added).

United Specialty points to no language that limits coverage to accidents where all vehicles involved are covered autos. Nor was coverage limited to accidents involving covered autos owned by Werner. By its plain language, coverage under the Policy extended to accidents involving *any* covered auto. In sum, the Riggio Lawsuit sought damages from Werner—an insured under the express terms of the Policy—because of bodily injury caused by an accident and resulting from the ownership, maintenance, or use of a covered auto—the SMC tractor. Because the SMC tractor was a "covered auto" and that vehicle was involved in the Accident, United Specialty's duty arose as a matter of law.

    **B.    SMC's Duty Under the Trailer Interchange Agreement and Broker Carrier Agreement.**

Werner argues that under the Trailer Interchange Agreement and Broker Carrier Agreement SMC had, at a minimum, a duty to indemnify Werner for the cost of defending the Riggio Lawsuit. SMC argues that no such duty arose because neither agreement specifically required SMC to indemnify Werner for Werner's own negligence. Contracts requiring indemnification for one's own negligence are permitted in Nebraska only if the language of the contract is explicit and clear. *Oddo v. Speedway Scaffold Co.*, 443 N.W.2d 596, 602 (Neb. 1989) (citing *Omaha Public Power Dist. v. Natkin & Co.*, 227 N.W.2d 864, 867 (Neb. 1975). "An indemnitee may require another to insure losses incurred by reason of his or her own negligence if the contract contains express language

to that effect or contains clear and unequivocal language that it is the intention of the parties." *Anderson v. Nashua Corp.*, 560 N.W .2d 446, 449 (Neb. 1997) (citing *Oddo*, 443 N.W.2d at 602). SMC asserts that neither the Trailer Interchange Agreement nor the Broker Carrier Agreement contained express and unequivocal language requiring SMC to indemnify Werner for Werner's own negligence.

### 1. Trailer Interchange Agreement

Under the language of the Trailer Interchange Agreement, SMC was required to, at a minimum, indemnify Werner in the Riggio Lawsuit. The Nebraska Supreme Court emphasized that "[w]here the terms of a contract are clear, they are to be accorded their plain and ordinary meaning." *Chief Indus., Inc. v. Great Northern Ins. Co.*, 683 N.W.2d 374, 381 (Neb. 2004). In *Chief*, the court referred to an insurer's duty to defend and duty to indemnify as "two separate and distinct obligations…" *Id.* at 383. The court concluded that because "the duty to defend and the duty to indemnify are separate and distinct obligations, it is possible, if perhaps not commonplace, for an insurer to limit its duty to defend without simultaneously limiting its duty to indemnify." *Id.* (citing *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881 (9th Cir. 2003)). In *Dastar*, the Ninth Circuit explained: "Liability for indemnity, unlike liability under the duty to defend, derives from factual determinations separate from the allegations in the complaint. As a result, [the insurer] could still have a duty to indemnify even if it did not have a duty to defend." 318 F.3d at 890.

The specific language of the Trailer Interchange Agreement contains the following specific indemnity language:

> User agrees to *indemnify, defend and hold Werner* and its past, present, and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns *harmless from* and against *any and*

13

> *all loss, cost, damages, expense, suits and claims for injury to persons (including injury resulting in death) and damage to property, where such loss, cost, damage, expense, suits and claims, arises out of or in connection with User's use of Werner Trailers* as specified in this Agreement, *except to the extent any such loss, damage, cost or expense, or claims of liability, including attorney's fees resulting from bodily injury to or death of any person or damage to any property, (other than cargo), is caused by the negligent acts or omissions of Werner or its employees or Agents*, provided however, that Werner shall have the right, at its expense, to participate in the defense of any litigation instituted against it without thereby relieving User of its obligations under this paragraph. User shall be responsible for, and agrees to indemnify and hold harmless Werner for any and all loss or damage to cargo unless such loss or damage is caused by the negligent acts of Werner or its shipper.

Filing No. 66-3, Trailer Interchange Agreement, ¶4.

Even if this language relieved SMC's obligation to defend Werner in the Riggio Lawsuit, once the negligence claims against Werner were dismissed, the plain language did not relieve SMC of its obligation to indemnify Werner. Because the negligence claims against Werner in the Riggio Lawsuit were dismissed on summary judgment, it is undisputed that none of the damages associated with the Riggio Lawsuit were actually caused by Werner's own negligence. *See* Filing No. 66-10.

SMC argues that its obligation was nevertheless relieved because the court in the Riggio Lawsuit did not make a finding that Werner was *not* negligent, and only concluded the Riggio plaintiff had no evidence of Werner's negligence. This argument is unavailing. The Riggio court granted summary judgment to Werner on the basis that there was no evidence supporting a claim that Werner was negligent. *See id.* Thus, there is no basis in this case to conclude that Werner was negligent. No language in the Trailer Interchange Agreement relieves SMC of its duty to indemnify on the mere allegation of Werner's negligence. A plain reading of the contract shows that SMC was required to defend and indemnify Werner unless the damages/costs/fees were actually caused by Werner's own negligence. The court in the Riggio Lawsuit determination—separate from the allegations

14

in the complaint—that there was insufficient evidence to show Werner was negligent. Therefore, SMC was not relieved of its duty to indemnify.

### 2. The Broker Carrier Agreement

SMC is also required to indemnify Werner under the Broker Carrier Agreement. SMC argues the language of the Broker Carrier Agreement does not unequivocally require SMC to indemnify Werner for its own negligence. SMC specifically argues that the Broker Carrier Agreement fails to specifically include "negligence" in the indemnification clause. However, an indemnity clause may require the indemnifying party to indemnify for the other party's negligence even if the indemnity agreement does not expressly so state, as long as the agreement contains clear language indicating that is the intent of the parties. *See* Oddo, 443 N.W.2d at 602. In *Oddo*, the indemnity clause at issue provided that the defendant would indemnify the plaintiff for claims arising out of the plaintiff's "CONDUCT (INCLUDING ACTIVE, PASSIVE, PRIMARY OR SECONDARY)." *See id.* In addition, the agreement stated that the "LESSOR SHALL ONLY BE LIABLE OR RESPONSIBLE FOR ACTIONS OF WILLFUL MISCONDUCT" and that the purpose of the indemnity clause was "TO SHIFT THE RISK OF ALL CLAIMS RELATING TO THE LEASED PROPERTY TO THE LESSEE DURING THE ENTIRE TERM OF THIS LEASE." *Id.* Although the indemnity clause did not contain the word "negligence," the Nebraska Supreme Court concluded the parties clearly and unequivocally articulated their intention for defendant to indemnify the plaintiff for claims arising from the plaintiff's conduct, including negligence (but excluding claims based on Speedway's willful misconduct). *Id.*

Similarly, The Broker Carrier Agreement unequivocally shows the parties intent to shift the risk of claims to SMC. The Broker Carrier Agreement between SMC and Werner states:

15

> **Indemnity**. Carrier shall defend, indemnify and hold Broker and its Customers and their respective past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors, and successors in interest, and assigns harmless from all fines, costs, penalties, liabilities, and claims of every kind, including attorney fees, costs of suit, settlements, judgments and all other expenses to which Broker may be subjected on account of loss or destruction or damage to any property whatsoever (including cargo) or injury to, or death of, persons whomsoever, arising out of or in connection with the transportation of property under this Agreement by Carrier, its agents, or employees. Carrier's obligation to defend, indemnify, and hold Broker and its Customers harmless under this Section 9 shall not in any manner be limited by any limitation on the amount or types of damages, compensation or benefits payable to Carrier, its agents or subcontractors under applicable worker's compensation acts, disability benefit acts or other employee benefit acts, and Carrier hereby specifically waives any immunity it may have under such acts.

Filing No. 66-2 at 4.

Like the provision in *Oddo*, although the parties did not use the word "negligence," the intended consequence of the indemnity clause was expressed clearly and unequivocally. The Broker Carrier Agreement states that SMC shall indemnify Werner from all costs and claims "of every kind" arising out of or in connection with SMC's transportation of property under the agreement. While the language in the Broker Carrier Agreement specifically limits the scope of SMC's indemnity obligation to claims that arise out of or in connection with SMC's transportation of property under the agreement, the parties did not further limit the types of claims that could so arise—SMC agreed to indemnification of claims "of every kind" so long as the claim at issue arose out of or in connection with SMC's transportation of property under the agreement. Accordingly, the parties' intent for SMC to indemnify Werner for all negligence claims that arose out of or in connection with SMC's transportation of property is expressed clearly and unequivocally and is therefore enforceable under Nebraska law.

16

## IV. CONCLUSION

For the reasons stated, the Court concludes that United Specialty breached its duty to defend and indemnify under the Policy. Moreover, SMC is in breach of its duty to indemnify Werner and SMC's indemnification obligation was not relieved because Werner was not found to be negligent. Accordingly,

IT IS ORDERED:

1. Plaintiff Werner Enterprises, Inc's Motion for Partial Summary Judgment ([Filing No. 64](#)) is granted consistent with this Memorandum and Order; and

2. Defendants SMC Transport, LLC and United Specialty Insurance Company Motion for Summary Judgment ([Filing No. 71](#)) is denied.

Dated this 30th day of March, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge
